Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MATTHIAS MUENCH<br><br>Peticionario<br><br>v.<br><br>GEOVANNY DISLA DÍAZ<br><br>Recurrido | TA2025CE00406 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2023CV10240 (602)<br><br>Sobre: Daños, Nulidad de Contrato |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de octubre de 2025.

Comparece ante nos el señor Matthias Muench ("señor Muench"), Melanie Crelia Hanzo y la Sociedad Legal de Bienes Gananciales compuesta por estos (en conjunto, "los Peticionarios") mediante *Recurso de Certiorari* presentado el 4 de septiembre de 2025. Nos solicita la revocación de la *Resolución* dictada y notificada el 3 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario determinó no resolver una solicitud de desahucio y lanzamiento instada por los Peticionarios, ya que la disposición de tal solicitud dependía de la adjudicación en los méritos del presente caso.

Por los fundamentos que expondremos a continuación, **denegamos** la expedición del auto de *certiorari.*

### I.

Conforme se desprende del expediente ante nuestra consideración, el 31 de octubre de 2023, el señor Muench presentó *Demanda* sobre nulidad de compraventa, restitución de título de

vehículo de motor y daños y perjuicios contra Geovanny Disla Díaz ("señora Disla" o "Recurrida").[1]  Por virtud de este escrito, el señor Muench alegó que en el año 2018 conoció a la señora Disla con quien comenzó una relación de amistad.  Adujo que la señora Disla le solicitó que la ayudara a rentar un apartamento ubicado en Barrio Obrero, a lo cual señor Muench accedió.  El señor Muench, aclaró que residía en Estados Unidos, viajaba periódicamente a Puerto Rico y se quedaba con la Recurrida en el apartamento arrendado.  Asimismo, agregó que posteriormente, la señora Disla le comunicó la existencia de una residencia en venta por un precio de oportunidad.  Al respecto, arguyó que la Recurrida lo convenció de comprar la aludida propiedad que estaba en venta y, el 3 de mayo de 2019, adquirió dicha propiedad.

De igual forma, se desprende de la *Demanda* que, tiempo después, la Recurrida convenció al señor Muench para que hiciera una escritura a los fines de que ésta figurara en el título de la propiedad en controversia.  A tono con lo anterior, el señor Muench aseveró que las partes otorgaron la Escritura de Compraventa de Participación, número 56, ante el notario público Héctor Olan Curet, mediante la cual la Recurrida adquirió una participación de un cincuenta por ciento (50%) de la propiedad.

No empece lo anterior, el señor Muench esgrimió que dicha escritura era nula, pues la misma estaba redactada en español pese a que este es angloparlante.  En ese sentido, enfatizó que no entendió lo que estaba firmando y únicamente suscribió el documento por la insistencia de la Recurrida.  Ante este cuadro, razonó que el otorgamiento de la escritura estuvo viciado y, por tanto, era ineficaz e inexistente para transmitir un título válido.

---

[1] Véase, SUMAC TPI, Entrada 1.

De igual forma, el señor Muench alegó, además, que era el dueño de un vehículo de motor en el que figuraba la Recurrida como la titular del mismo en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas. Señaló que dicha inscripción era ilegal y falsa. Finalmente, solicitó una indemnización de setenta y cinco mil dólares ($75,000.00) por concepto de angustias y sufrimientos y el pago de una renta razonable, no menor de seiscientos dólares ($600.00) mensuales, mientras la Recurrida residiera en la propiedad en controversia.

Posteriormente, el 30 de enero de 2025, el señor Muench presentó *Moción Solicitando Imposición de Pago de Renta por uso Exclusivo*.[2] Por virtud de este escrito, solicitó que la Recurrida pagara un canon de arrendamiento por la cantidad de mil doscientos dólares ($1,200.00) por el uso exclusivo que esta ejercía sobre propiedad en cuestión. Evaluada la solicitud del señor Muench, el 28 de febrero de 2024, el foro primario emitió *Orden*.[3] En ella, el foro *a quo* declaró *Sin Lugar* la solicitud interpuesta por el señor Muench, pues este no presentó evidencia en cuanto al valor del arrendamiento de la propiedad. Agregó el foro *a quo* que "estando la titularidad (o cotitularidad) en controversia, el tribunal no puede en esta etapa fijar una renta equivalente al 100% del valor o fijar una renta precisa".[4]

Tras varios eventos procesales, el 17 de abril de 2024, el señor Muench radicó *Segunda Moción Solicitando Imposición de Pago de Renta y Otro Remedio*.[5] Mediante este escrito, esbozó que había conseguido "una opinión de valor por una experta" la cual acompañó con su escrito. Cónsono con lo anterior, expuso que el 14 de septiembre de 2023, interpeló por escrito a la Recurrida a los fines

---

[2] Véase, SUMAC TPI, Entrada 22.
[3] Véase, SUMAC TPI, Entrada 29.
[4] *Íd.*
[5] Véase, SUMAC TPI, Entrada 41.

de cobrarle el pago de la renta. Describió que dicha interpelación se realizó por medio de una misiva la cual se remitió tanto a la señora Disla como a la representación legal de esta. De igual forma, conforme a la opinión de valor sometida junto al escrito, estimó que la renta razonable para el tipo de residencia ocupada por la Recurrida ascendía a mil doscientos dólares ($1,200.00) mensuales. En conformidad con lo anterior, solicitó que se le impusiera a la Recurrida el pago de la cantidad antes descrita por la ocupación exclusiva de la propiedad a partir del 15 de septiembre de 2023.

Subsiguientemente, el 6 de mayo de 2024, señor Muench presentó *Segunda Demanda Enmendada*.[6] Por virtud de esta, el señor Muench incluyó a su esposa Melaine Crelia Hanzo ("señora Crelia"), también conocida como Melanie Muench, y a la Sociedad Legal de Bienes Gananciales compuesta por ambos como demandantes en el pleito. Asimismo, se desprende de la *Segunda Demanda Enmendada* que la reclamación por concepto de daños y perjuicios ascendía a ciento cincuenta mil dólares ($150,000.00) y, además, se incluyó una reclamación por daños punitivos, también ascendientes a ciento cincuenta mil dólares ($150,000.00).

Así las cosas, el 10 de mayo de 2024, el foro *a quo*, emitió y notificó *Orden*.[7] Mediante esta, el foro primario le concedió a la Recurrida un término final de quince (15) días para que se expresara en cuanto a la solicitud del cobro de renta instada por el señor Muench. Por su parte, en respuesta a la demanda enmendada, el 10 de junio de 2024, la Recurrida presentó *Contestación a Demandada Enmendada y Reconvención*.[8] En esencia, la señora Disla negó ciertas alegaciones y levantó sus defensas afirmativas. De la misma forma, en dicho escrito instó *Reconvención.* En ella,

---

[6] Véase, SUMAC TPI, Entrada 56.
[7] Véase, SUMAC TPI, Entrada 61.
[8] Véase, SUMAC TPI, Entrada 68.

afirmó que la Escritura de Compraventa en la que se adquirió una participación de cincuenta por ciento (50%) de la propiedad suscrita por el señor Muench y la Recurrida, realmente fue una simulación. Alegó que la verdadera intención era que el señor Muench le donara el cien por ciento (100%) de la participación a la Recurrida. Indicó que, en el presente caso, concurrieron los elementos necesarios para el perfeccionamiento de una donación y aclaró que desconocía que la señora Crelia también era titular de la propiedad, pues el señor Muench compareció solo al otorgamiento de la escritura. Asimismo, esgrimió que el señor Muench actuó contra sus actos propios, lo cual le generó angustias mentales, valoradas en no menos de ciento cincuenta mil dólares ($150,000.00).[9]

Tras varios trámites procesales que no son necesarios detallar, el 13 de enero de 2025, notificada al día siguiente, el foro *a quo* emitió *Orden de Mostrar Causa*.[10] En lo pertinente, el foro primario le concedió a la Recurrida un término de quince (15) días para que mostrara causa "por la cual no se le deba imponer el pago de renta por el uso del apartamento durante la pendencia del litigio conforme ha solicitado la parte demandante".[11]

Oportunamente, el 20 de enero de 2025, la Recurrida presentó *Moción en Cumplimiento de Orden*.[12] Mediante este escrito, adujo que el pago de renta solicitado era un remedio provisional, el cual requería la celebración de una vista y la imposición de una fianza. Por consiguiente, la señora Disla solicitó que el foro primario se abstuviera de conceder el remedio solicitado sin antes cumplir con

---

[9] Subsiguientemente, el 17 de junio de 2024, la Recurrida presentó *Reconvención Enmendada*. En lo pertinente, solicitó que se le ordenara a los Peticionarios el pago de una indemnización de seiscientos cincuenta mil dólares ($650,000.00) en concepto de daños por angustias mentales, más el pago de costas y honorarios de abogado. Véase, SUMAC TPI, Entrada 73.
[10] Véase, SUMAC TPI, Entrada 110.
[11] *Íd.*
[12] Véase, SUMAC TPI, Entrada 111.

el debido proceso de ley y garantizar la celebración de una vista evidenciaria.

Así las cosas, el 3 de febrero de 2025, el foro primario emitió y notificó *Orden sobre Pago de Rentas*.[13] Por virtud de esta, el foro primario dispuso lo siguiente:

> Las partes se disputan el 50% de la titularidad del Inmueble. Por lo cual le corresponde a la Demandada pagar renta por el restante 50% durante la pendencia del litigio. En virtud de lo anterior, se ordena a la Demandada Geovanny Disla Díaz pagar $725 mensuales computados a partir del 1 de febrero de 2024. Cuyas cantidades depositará en el tribunal como sigue: $8,700 por rentas acumuladas hasta el 31 de enero de 2025 que deberá depositar en un plazo de 30 días; más $725 por cada mes adicional, que deberá depositar en o antes del día 15 de cada mes calendario hasta la resolución del caso o desalojo del Inmueble.[14]

Inconforme con el resultado, el 18 de febrero de 2025, la Recurrida instó *Solicitud de Reconsideración*.[15] Mediante esta, solicitó que el foro primario reconsiderara su determinación y ordenara la celebración de una vista evidenciaria en la que los Peticionarios debían probar la justificación y cuantía de la renta solicitada. En igual fecha, los Peticionarios radicaron *Oposición a Moción de Reconsideración de la Parte Demandada*.[16] Esencialmente, esbozaron que la Recurrida se cruzó de brazos y efectivamente renunció a defenderse. Evaluadas las posturas de las partes, el 19 de febrero de 2025, notificada el 25 de febrero del mismo año, el foro primario declaró *Sin Lugar* la solicitud de reconsideración.

Aun inconforme, el 5 de marzo de 2025, la Recurrida presentó *Petición de Certiorari* ante este Tribunal de Apelaciones.[17] Evaluada la controversia, esta Curia expidió el auto de *certiorari* y modificó la resolución recurrida mediante *Sentencia* emitida el 10 de abril de

---

[13] Véase, SUMAC TPI, Entrada 113.
[14] *Íd.*
[15] Véase, SUMAC TPI, Entrada 116.
[16] Véase, SUMAC TPI, Entrada 117.
[17] Véase, SUMAC TPI, Entrada 119.

2025 en el alfanumérico KLCE202500212. Del referido dictamen se desprende lo siguiente:

> Según se desprende de la aludida realidad jurídica, el señor Muench y la peticionaria mantienen una comunidad de bienes sobre el inmueble objeto de litigio. **Por el momento, según consta en la Escritura Pública Núm. 56, se presume que ambos son dueños de la propiedad en una porción de cincuenta por ciento (50%) cada uno.** En vista de lo anterior, hasta que no se adjudique finalmente la controversia sobre la titularidad de la referida propiedad, ambos tienen derecho al uso y disfrute de la misma. Ante ello, no existe controversia sobre que la peticionaria utiliza unilateralmente el bien en cuestión con exclusión del señor Muench. Por lo cual, procede que la peticionaria pague un canon de arrendamiento por dicho uso exclusivo.
>
> Surge de las peticiones presentadas por la parte recurrida, que la renta por el uso total de la propiedad se valoró en la cantidad de $1,200.00 mensuales. En este caso, procede que la peticionaria pague una renta por el cincuenta por ciento (50%) que posee en exceso a su titularidad actual. Esto, hasta tanto se adjudique finalmente la controversia sobre dicha titularidad. Así pues, le corresponde a la peticionaria pagar a favor de la parte recurrida la mitad de los $1,200.00 solicitados en concepto de renta. Entiéndase, la peticionaria debe pagar una renta a favor de la parte recurrida por la cantidad mensual de $600.00 y no de $725.00 mensuales (Énfasis nuestro).[18]

Así las cosas, el 2 de julio de 2025, los Peticionarios presentaron ante el foro primario *Moción Solicitando Orden de Desahucio y Lanzamiento*.[19] Por virtud de este escrito, aludieron a que el 28 de mayo de 2025, el foro primario le ordenó a la Recurrida acreditar el pago de la renta, según ajustada por el Tribunal de Apelaciones. No obstante, argumentaron que la Recurrida no efectuó pago alguno. Por tal motivo, los Peticionarios razonaron que la consecuencia del aludido impago era el desahucio y lanzamiento de la señora Disla sin más citarle ni oírle.

Al día siguiente, el foro primario emitió y notificó *Orden RPC 37.4*. Surge de dicha *Orden* lo siguiente:

---

[18] Véase, Sentencia emitida por el Tribunal de Apelaciones el 10 de abril de 2025, KLCE202500212, PÁGS. 11-12.
[19] Véase, SUMAC TPI, Entrada 135.

> La consideración de la MOCIÓN SOLICITANDO ORDEN DE DESAHUCIO Y LANZAMIENTO se postpone toda vez que su adjudicación depende de la resolución de los méritos del caso. La Conferencia Con Antelación Al Juicio está señalada para el 11 de julio de 2025. Sin embargo, a esta fecha no consta en el expediente del tribunal el Informe Preliminar Entre Abogados. Se deja sin efecto el señalamiento pautado para el 11 de julio de 2025. En un plazo de 30 días, las partes se reunirán para preparar el Informe Preliminar Entre Abogados, el cual deberán presentar en o antes del 25 de agosto de 2025. La Conferencia Con Antelación Al Juicio queda reseñalada para el 16 de octubre de 2025 a las 2:00 pm, mediante videoconferencia.[20]

El 17 de julio de 2025, los Peticionarios presentaron *Moción de Reconsideración*.[21] En esta reiteraron que la única consecuencia lógica y efectiva para sancionar el incumplimiento del pago de la Recurrida era ordenar su desalojo. Evaluado este escrito, el 6 de agosto de 2025, notificada al día siguiente, el foro primario emitió *No Ha Lugar* a la solicitud de reconsideración.[22]

Inconforme aun, el 4 de septiembre de 2025, los Peticionarios acudieron ante esta Curia mediante el recurso de epígrafe y esgrimieron los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al negarse a conminar a la parte Recurrida a cumplir con las [ó]rdenes de pago de renta del TPI y del Tribunal de Apelaciones

> El Tribunal de Primera Instancia se excedió en el uso de su discreción, al posponer se deber de hacer cumplir su orden confirmada, porque esa determinación depende de la adjudicación de los méritos del caso

El 5 de septiembre de 2025, esta Curia emitió *Resolución* en la cual se le concedió hasta el 15 de septiembre de 2025 a la Recurrida para que mostrara causa por la cual no debíamos expedir el auto de *Certiorari*. Oportunamente y en cumplimiento con la orden emitida, el 15 de septiembre de 2025, la señora Disla compareció mediante *Alegato en Oposición a Certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a

---

[20] Véase, SUMAC TPI, Entrada 136.
[21] Véase, SUMAC TPI, Entrada 139.
[22] Véase, SUMAC TPI, Entrada 143.

exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (5) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re*

*Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd*. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Acción legal de desahucio

En nuestro ordenamiento jurídico, "[l]a persona con derecho a poseer un bien tiene acción para promover el juicio de desahucio contra cualquier poseedor sin derecho a poseer". Artículo 725, Código Civil (2020), de la Ley Núm. 55-2020, 31 LPRA sec. 7863, según enmendada. La acción de desahucio es el medio que tiene el dueño de un inmueble arrendado para recobrar judicialmente la posesión de éste mediante la expulsión del arrendatario que se mantiene en la propiedad sin pagar canon o merced alguna. *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 799 (2023); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020).

A esos fines, el Artículo 620 del Código de Enjuiciamiento Civil de Puerto Rico, de la Ley Núm. 6 de 31 de marzo de 1933, 32 LPRA sec. 2821, según enmendada, regula principalmente esta figura:

> Tienen acción para promover el juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.

Por su parte, el Artículo 621 de la precitada legislación, 32 LPRA sec. 2822, dispone contra quién procede presentar la acción judicial de desahucio:

> Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna.

Por otro lado, conviene explicar que, el desahucio puede solicitarse en un proceso ordinario o en un proceso sumario. *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). Por tanto, "cuando el demandado presenta otras defensas afirmativas relacionadas con la acción de desahucio, éste puede solicitar que el procedimiento se convierta al trámite ordinario". *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016).

De conformidad con lo anterior, una vez probados los hechos, le corresponde al Tribunal de Primera Instancia conceder el desahucio. Ello, pues, el objetivo de esta acción especial es recuperar la posesión de hecho de un bien inmueble mediante la expulsión del arrendatario que no haya pagado canon o merced alguna. *SLG Ortiz-Mateo v. ELA, supra,* págs. 799-800.

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, los Peticionarios no han demostrado que el foro de

instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho.    Tampoco constataron que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones